Good morning, Your Honors. My name is Todd Grover. Hold on a second. I have to call your case. Of course. Pardon me. Or you'll be arguing and it won't count. We're going to reach United States v. Mikhaylov. Thank you, Judge. And good morning again. May it please the Court and the Counsel. My name is Todd Grover. I represent the appellant Yevgeny Mikhaylov. This is an appeal from a criminal case in which Mr. Mikhaylov challenges the district court's denial of his motion for judgments of acquittal. He was charged and tried for four counts of mail fraud and one count of conspiracy to commit mail fraud. At the conclusion of the government's case in chief, he moved for judgments of acquittal. In essence, his argument was and is before this Court that the government failed to introduce in its case in chief  critical to liability under both mail fraud and conspiracy to commit mail fraud is a specific intent. There must be a willful participation in a fraudulent scheme, knowledge of the fraudulent scheme, and an intent to further the objectives of the fraudulent scheme. There is no question on this appeal as to the applicable legal standard that must govern your decision. The evidence that the government introduced in its case in chief of intent was all circumstantial, and that's fine. As this Court well knows, juries may base their verdict on inferences drawn from circumstantial evidence, but they may not base their verdict on speculation or suspicion. No dispute about that. The dispute is about the application of that principle to this case. Your Honor, I'm going to make one point about the application of the principle in this case because I think it's frankly been well briefed by the parties, and I won't belabor the facts. And after I make that point, I'd like to reserve a couple moments for response. The point is this. As the Court recalls what it's read about the arguments in the briefs, and as it thinks about those arguments and hears additional argument today, the Court should take a close look at the party's use of the term inference, and this is critical. In my view, the government uses that term far too liberally. The government refers to reasoning processes as inferences when, in fact, they are not. And let me give you an example. The government cites evidence, circumstantial evidence in the case. For instance, there was evidence that what had happened in this case, Your Honors, is that there were some cars that had been damaged. These are referred to as salvaged vehicles. I think we're familiar with it. Okay. Some were repaired and passed off as non-damaged vehicles. There were also cars that were stolen, and vehicle identification number plates were switched from the damaged vehicles onto the stolen vehicles, and then those were sold. There was evidence that this occurred, to be certain. There was also evidence that the mechanical work, that a mechanic went in there and did some very fine work to fix up these cars or do the VIN switches. And just on the VIN number, apparently that's not just unscrewing it. It's a little more difficult. Correct. There was quite a bit of testimony in the record about that. But, right, apparently the VIN number is on a number of locations in the car that I was not previously familiar with, some on the door, some on the dash. There are also different numbers that are often stamped on, apparently, the engine block, and these are cross-referenceable through the manufacturer to the VIN number, so law enforcement can track down vehicle parts and match them with cars. The point I was going to make, Your Honor, is that there was also evidence in the case that my client, Mr. McHaloff, is a good mechanic. The government seizes on this kind of evidence and says, Aha, we have a good mechanic, we have evidence of skillful mechanical work being done. Ergo, the jury can infer that Mr. McHaloff must have been the person who did that good mechanical work and therefore must have known of the underlying fraud and therefore there is evidence sufficient to support the conviction. That is not an inference. They rely on a little more than just that, don't they? No, they do. And I'm using this as an example of the government's argument. There are, I would say, maybe three or four sort of discrete bodies of evidence that the government cites as evidence that the jury could use to draw inferences. And what I am saying Isolate the automobile business because he was receiving, according to the record, receiving pink slips in the mail. Is that not correct? Could you repeat that? I'm not sure I heard what you said, Your Honor. You're referring to his expertise as a mechanic. Yes. It doesn't take expertise as a mechanic to receive pink slips in the mail. First of all, I'm not sure exactly what you mean by pink slips, but there's no evidence to my recollection in the record that Mr. McAloff received anything personally in the mail. There were certainly mailings to be used, and I think what the Court perhaps is referring to is that there is evidence that people associated with Mr. McAloff, two of his friends came and testified, some of his testimony about his co-defendants in the government's case in chief. Some of these co-defendants, some of these friends, were involved in submitting to the Oregon Department of Motor Vehicles applications for vehicle titles. And there is a body of evidence that the government cites where Mr. McAloff was at least tangentially involved in that. In two instances over the course of about a year or thereabouts, Mr. McAloff solicited the permission of two friends to use those friends' names and addresses on title applications in the event that he wanted to apply to the DMV for a title. They received those and gave them to him. Yes, and they did receive those. And here's the critical point about this. Nobody knows how that happened. How did those title applications get filled out? The friends, by the way, whose names and addresses appear in those applications, testified that they did not fill those out. And that's uncontradicted. There's no evidence that Mr. There's no direct evidence that Mr. McAloff personally filled those out. It's just the evidence that he asked whether or not somebody could use that information on a title application, and we know that occurred. Well, didn't Polonsky testify that he, McAloff did ask him? Correct. He is one of the friends. He would if he could use his name to submit a title application. Yes. Yes, he did. Did that show some evidence of cyanide? It is what I would call very suspicious, Your Honor. But that's the problem with the government's case. It doesn't go on beyond mere suspicion. It leaves, or I should say it raises more answers or, pardon me, more questions than answers. How did that application get submitted? There is also evidence in the case. In these mail fraud or conspiracy cases where you have a scheme to defraud, each defendant doesn't have to walk down to the post office and drop something in the mail. It's entirely possible that each defendant has a role in the scheme that doesn't involve use of mails. But that's never been a bar to prosecution. That's correct. But the defendant, to be liable under the statute for conspiracy or mail fraud, must still be aware of the underlying fraud. So he may personally go drop that thing in the mail. But if he doesn't know that he's being used as a pawn by his co-defendants or others. What counts are you claiming there was no evidence to identify McHaloff as a participant? I think the 13, your brief 13 is one that was pretty weak. There are four substantive mail fraud counts and then the conspiracy count. And it's our position, Your Honor, that we rise or fall on that. What was wrong with count 13? Count 13 has the same infirmities as do all of the counts, Your Honor. There is evidence. Let me make sure that I'm not, I don't want to cite you evidence from the wrong, pertaining to the wrong count. Count 13 is quite different than the others, is it not? No. I would not say in any material respect, Your Honor. I mean, there are slightly different players involved. But I would suggest, and I suspect the government may agree, that the same body of evidence would be considered generally by the verdict or by the jury in determining whether or not my client had the necessary knowledge that would be important to that count. Rather than use up your time trying to find it, why don't you save that for rebuttal and we'll let you answer the question. Thank you. Whatever the government has to say. Thank you. May it please the Court. I'm Amy Potter and I represent the United States in this matter. This is a case about the sufficiency of the evidence. In order to sustain his burden, the defendant must show that viewing the evidence in the light most favorable to the government and granting the government all reasonable inferences that may be drawn from that evidence, no rational trier of fact could find beyond a reasonable doubt that the defendant was involved. I submit that the evidence in this case, drawing those reasonable inferences, does support a conviction in this matter. I think the defense pointed to one specific example, the example that McKayloff was a good mechanic and that the government argues that the jury could draw an inference that he may have been involved in the VIN switches. If that alone was the only evidence presented in this case, that's correct. There wouldn't be sufficient evidence to convict him of the conspiracy or the mail fraud, but that's not the only evidence. In each case, we have cars. There are three counts of cars that were stolen and the VINs were switched and then we have one car where it was just a salvaged vehicle. In all those cases, we have the co-defendants in this matter, either Tow Car and Ray Land or Schatzoff taking the cars originally, being originally titled. And then we have the defendant either getting his friend's information to title the cars. And the defense is correct. We don't know that the defendant, McKayloff, filled out the application. However, he was the one who came in possession of his friend's personal information. Ms. Potter, I wonder if I could direct your attention to Count 13. I'm a little troubled by that one. Can you point in the record to evidence, direct evidence linking McKayloff to the title washing of the 1997 Toyota Camry, the placement of its VIN plates onto a stolen Toyota Camry or the sale of the stolen Toyota Camry? I find it in other counts, but I don't see it in that one. Can you help me? In that one, we do not have evidence that he was involved in the actual title washing. And what we can point to, and I think this is key, is we have evidence of Dumitrosch's statements in the government's case in chief. We have a witness, Marinchenko, I apologize if I am mispronouncing the name, who Dumitrosch spoke to. Marinchenko bought the car related to Count 13. And when Dumitrosch spoke to him and said, I can't give you your money back, he said, I can't give you the money back because McKayloff and I sold this car together and I gave him the money from the sale. So we have McKayloff involved in the sale of this car. And because generally he's involved in a conspiracy, we also have his general involvement in all aspects of the conspiracy, including the title washing, which would involve him in the scheme to defraud, the general scheme to mail the titles, get back clean titles, and then sell these cars. So it really does depend on being able to supplement that statement by the alleged co-conspirator with the entirety of the evidence that's before the jury. Is that correct? Yes. In other words, if all you had was Count 13 alone and that's all the evidence that was in, he's a good mechanic, and then he is said to have sold the joint in the sale, that wouldn't get you over the hurdle. He would have gotten away from mail fraud, not without the general involvement in this general scheme to defraud by obtaining new salvage titles. Unless the Court has further questions. No. Thank you very much. And, Your Honor, I would conclude by pointing the case again to two decisions of this Court that I have cited in my brief, but perhaps not emphasized as I should have. And these are decisions that I do not believe the government's case adequately addressed or takes account of. That's the Price decision, and then in my reply brief, United States v. Messer, which I believe is a 1999 decision of this Court. Both of those decisions, Your Honor, suggest very strongly that, as in this case, where there are merely circumstantial evidence that appear to be suspicious that the defendant's fingerprints are on the case, that is not enough for a conviction. The difference between the price and the fingerprints is because maybe he was a mechanic and showed up more, but he had a little more activity and knowledge and involvement than Price. Well, I would dispute that. I don't believe so, Your Honor. You're aware of the evidence. You've got the briefs, Judge. Thank you. Thank you very much. Counsel, thank you for your arguments. We appreciate it. And that will conclude our calendar. And we thank counsel for arguments.
judges: Goodwin, Fisher, Smith